## RUDOLPH WOLF *v.* CARRIE P. JOHNSON.
[No. 27, January Term, 1929.]

*Decided March 21st, 1929.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles W. Claggett,* for the appellant.

*Wilson L. Townsend* and *Irving Diener,* submitting on brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the 4th day of December, 1926, Irving Owings and Jeannette Owings, his wife, conveyed a parcel of ground, situate in Anne Arundel County, unto J. Roland Johnson and the appellee, Carrie P. Johnson, his wife, "as joint tenants with the common law right of survivorship."

J. Roland Johnson died on the 17th day of July, 1927, and, in December of that year, the appellee was informed by Rudolph Wolf, the appellant, that he held a promissory

note for the sum of $1,100, dated January 24th, 1927, payable to him three years after date, with interest, purporting to be signed by herself and husband and secured by a deed of trust upon the above mentioned property. This note was, at the time, exhibited to her by the appellant, and upon examination of the records in the office of the clerk of the Circuit Court for Anne Arundel County, she found the deed of trust there recorded. Whereupon she filed her bill against the appellant and Eldred H. Buchanan and Edward L. Cotter, the trustees named in the deed of trust, in which she alleged, in addition to the facts stated, that she did not sign the promissory note and did not sign or acknowledge the deed of trust, and that said signatures were forgeries. She further alleged that the note and the deed of trust, given to secure it, recorded as alleged, created a cloud upon her title to the property described in the deed of trust, and she asked that it be removed.

The defendant, Rudolph Wolf, answered the bill, denying plaintiff's allegation that the note was not signed, and the deed of trust was not signed and acknowledged, by her; and, on the same day, he filed a cross-bill, containing allegations in effect the same as the denials of his answer, and prayed (1) that a decree be passed establishing the lien of the deed of trust upon the property therein described, and, (2) should the court find the signatures of Carrie P. Johnson to the note and deed of trust to be forgeries, that a decree be passed establishing the lien of the deed of trust upon the one-half interest of the husband in the property, and, in addition thereto, decree a sale of the property for the purpose of partition.

To this cross-bill, the appellee answered, denying she had signed the note and had signed and acknowledged the deed of trust. The trustees, who were nonresidents of the state, and against whom an order of publication was passed, failed to appear and answer, and a decree *pro confesso* was passed against them.

At the hearing had upon evidence taken under the order of the court, two questions were presented to the court for

its consideration: (1) Did Carrie P. Johnson sign the note and did she sign and acknowledge the deed of trust? and (2) What was the character of the estate that she and her husband took under the aforesaid conveyance to them, that is, was it a joint tenancy, or an estate by the entireties?

As to the first of these questions, the court held that Carrie P. Johnson did not sign the note and did not sign and acknowledge the deed of trust. Its answer to the second question was that the husband and wife, grantees under the deed to them, took an estate by the entireties and not as joint tenants, and a decree was accordingly passed dismissing the cross-bill, and declaring the note and deed of trust null and void as against Carrie P. Johnson, and the lands described in the deed of trust. From this decree the appeal was taken.

After the passage of the decree, the appellant in an agreement with the appellee, found in the record, conceded the correctness of the court's decision in holding that the appellee did not sign the note, and did not sign and acknowledge the deed of trust, and, as a result of that concession, the evidence taken was not inserted in the record. Therefore, the only question which we are here called upon to decide is whether the estate granted to the appellee Carrie P. Johnson and her husband was a joint tenancy or an estate by entireties.

This question, we think, is answered by the decision in *Fladung v. Rose,* 58 Md. 13, where certain lands were conveyed to one Fladung and wife for the purpose, as recited in the deed to them, "of creating a joint tenancy in Bernard Fladung and Barbara Fladung," and the *habendum* in said deed was "to the said Bernard Fladung and Barbara Fladung his wife, as joint tenants and not tenants in common, the survivor of them and the heirs, personal representatives and assigns of such survivor." In that case, Judge Miller speaking for the court, in an opinion handed down on March 2nd, 1882, said:

"In Maryland there are but two cases in which deeds conveying property to husband and wife have come before this court for construction. The first is *Craft v. Wilcox,* 4 Gill,

504, where the conveyance was to husband and wife 'and their heirs and assigns forever, and the survivor of them,' and it was held the husband took the whole by survivorship. In that case it was contended that, as the deed was executed since the Act of 1822, ch. 162, which prohibited the creation of an estate in joint tenancy unless the instrument expressly provides that the property conveyed 'is to be held in joint tenancy,' the grantees took as tenants in common, but the court said the deed was not affected by this act, because it 'does not create a joint tenancy.' The opinion delivered by the court in that case is exceedingly brief, and it must be confessed is not very satisfactory. The other case is *Marburg v. Cole,* 49 Md. 402, where the deed simply conveyed the property to husband and wife 'their heirs and assigns in fee.' The wife survived, and the question in the case was whether she had and could convey a clear title to the property. The court recognized the common law doctrine stated by Blackstone that husband and wife, being considered as one person in law, cannot, under a conveyance to them jointly, take the estate by moieties; but both are seized of the entirety *per tout et non per my,* as still in force in this state, and held, 1st, that the estate conveyed to husband and wife by a deed like the one in that case, is not to them as joint tenants at common law, and hence the Act of 1822, ch. 162, does not apply; and 2nd, that the provisions of the Code, art. 45, secs. 1, 2, authorizing married women to acquire and hold property as therein provided, do not 'at all affect the nature of the estate conveyed to husband and wife by deed to them jointly.' This is the extent of the decision in that case. Nothing further was in fact decided or intended to be decided. * * *

"In neither of these cases did the deed profess to create an estate in common or a joint tenancy, and in the latter this fact is noticed, and the court refrained from expressing any opinion as to what would be the effect of a conveyance like the one now before us, which in terms declares the grantees shall take as joint tenants, and not as tenants in common. and which was executed with the avowed intent and for the

express purpose of creating a common law joint tenancy. It has not, therefore, been decided in this state that under such a conveyance husband and wife * * * cannot take and hold as joint tenants, nor do we find such a decided preponderance and weight of authority elsewhere, as to conclude the question.

"It is true there may be found in many cases expressions and *dicta* to the effect that in no contingency, no matter what may be the terms of the grant, can husband and wife under a conveyance to them after marriage, take or hold as joint tenants or as tenants in common; but the cases in which the point has directly arisen, and where it has been expressly so adjudged, are very few. In *Pollock v. Kelly,* 6 Irish Com. Law, 367, the deed conveyed the property to husband and wife 'as joint tenants,' and it was held that the effect of it was to grant an estate by entireties; 'for to speak of a grant to a husband and wife as an estate of joint tenancy is, properly speaking, a solecism.' On the other hand, Mr. Preston nearly a century ago, in his valuable *Treatise on Estates,* after stating the common law doctrine of tenancy by entireties to be when husband and wife take an estate to themselves jointly by grant or devise made to them during coverture, and showing that it is founded upon the legal notion of the unity of two persons who are husband and wife, says, 'In point of fact, and agreeable to natural reason, free from artificial deductions, the husband and wife are distinct and individual persons; and accordingly when lands are granted to them as tenants in common, thereby treating them without respect to their social union, they will hold by moieties as other distinct and individual persons would do.' *Preston on Estates,* 131, 132. We have been referred to no English cases and we have found none in which this opinion of Mr. Preston has been reviewed. In this country it has been quoted, and with apparent approval by all the text-writers. 4 *Kent,* 363; *Bishop on Married Women,* sec. 616; *Freeman on Co-tenancy,* sec. 72; 1 *Washburn on Real Prop.* 674. The actual decisions upon the point have, however, been conflicting. * * *

"We find then nothing in point of authority absolutely decisive against the view of the law thus taken by Mr. Preston. But assuming it to have been erroneous at the time it was originally announced, has not the common law been so far modified in recent times as to allow the adoption of such a rule? Modern legislation in this country has to a very great extent removed the common law disabilities of married women, and in this respect the statute law of Maryland is quite as liberal, and has gone quite as far as that of most of her sister states. * * * In view of these provisions, it seems unreasonable to say that the legal unity and oneness of man and wife, upon which the peculiar tenancy by entireties was founded, still continues just as it existed at common law. Nor is it inconsistent with what was decided in *Marburg v. Cole, supra,* to hold that the common law in this particular has been, to some extent at least, modified by our statutes. We have said in that case that these provisions of the Code do not affect the nature of the estate, which, according to the common law, husband and wife take by a grant to them jointly, but this must be confined as it was intended to be, to cases where the terms of the grant are similar to those in the deed then under consideration, viz., to husband and wife jointly, or to them and their heirs and assigns in fee. In such cases we have said the common law rule prevails and a tenancy by entireties is the result, but this was not placed on the ground of any existing incapacity of husband and wife to take in any other mode. Where the terms of the instrument are such or similar to those used in that deed, the presumption is the parties intend to create this peculiar species of tenancy, and the common law remains in force so far as to require the estate to be limited accordingly. But where the intention is manifest, and apt words are employed to create a tenancy in common or a joint tenancy, we are of opinion that in this state husband and wife are now capable of taking and holding as tenants in common or as joint tenants, according to the express terms of the grant, and if at common law they were incapable of so taking and holding, the effect of our statute law is to remove that incapacity * * *.

"We therefore adjudge that Fladung and wife became joint tenants of the property conveyed to them by the deeds of October, 1871; and as it is conceded the husband's interest as joint tenant can be seized in execution and sold by his creditors during the life of the wife, the decree appealed from, which provides for such sale unless the complainant's judgment be paid, must be affirmed."

We have found no other case decided by this court where this precise question has been presented to it for its determination, nor has our attention been called to any such case.

It is claimed that in other cases, following *Fladung v. Rose, supra,* expressions are found inconsistent with the decision there reached. Among them is the case of *Brewer v. Bowersox,* 92 Md. 578. In that case, Bowersox, after moving to Frederick, Maryland, from the West, deposited in a bank of that city certificates of deposit, issued by a bank in Kalamazoo, payable to the husband and wife, subject to the order of either, and received therefor a certificate from the Frederick Bank in these words: "The Frederick Town Savings Institution of Frederick, has this day received of Jacob or Emily J. Bowersox nineteen hundred and eighty-one 72-100 dollars, which sum with the interest thereon at three per cent. per annum, will be paid to them or their order, at sixty days' notice, after the expiration of six months from date," signed by the president and secretary of that institution. The court in that case, speaking through Judge McSherry, said:

"The common law rule is that the words which in a conveyance to unmarried persons constitute a joint tenancy, will create, if the grantees are husband and wife, a tenancy by entireties; and by the common law an estate granted to a number of persons without any restrictions or qualifications or explanations will be construed a joint tenancy. This latter doctrine of the common law was modified, indeed inverted, by the Maryland Act of 1822, ch. 162 (sec. 13, art. 50 of the Code), but that legislation has no relation to a tenancy by the entireties. *Craft v. Wilcox,* 4 Gill, 504; *Marburg v. Cole,* 49 Md. 412; *Fladung v. Rose,* 58 Md. 20.

* * * The marital relation with its common law unity of two persons in one, gives rise to this peculiar estate when a conveyance or gift is made to them without restrictive or qualifying words; and they hold as tenants by the entirety, not because they are declared to so hold, but because they are husband and wife. This estate with its incidents continues in Maryland as it existed at the common law. *McCubbin v. Stanford,* 85 Md. 390. * * *

"Upon the face, then, of the certificate a tenancy by the entireties was created with all its legal incidents."

The court, in effect, there said that, under the common law rule, the grant of property to two or more persons, without restrictions, qualifications, or explanations, created a joint tenancy, and that when property was so granted to husband and wife, they took as tenants by the entireties. This is still the recognized law of Maryland, and in no sense is it in conflict with the decision in *Fladung v. Rose, supra,* which is cited by Judge McSherry in support of the announcement of the law as therein made by him. The statement made in *Brewer v. Bowersox, supra,* that "the marital relation with its common law unity of two persons in one, gives rise to the peculiar estate (tenants by entireties) when a conveyance or gift is made to them "without restrictive or qualifying words," cannot, we think, be properly construed as meaning that no joint tenancy can be created where the grant to husband and wife contains qualifying words, or words of explanation clearly showing that the estate created thereby was to be a joint tenancy.

Nor do we find anything in the later cases of *McCubbin v. Stanford,* 85 Md. 378, and *Masterman v. Masterman,* 129 Md. 167, inconsistent with the decision in *Fladung v. Rose, supra.* In *Masterman v. Masterman, supra,* a dwelling house on a leasehold estate owned by the husband and wife as tenants by the entireties was partially destroyed by fire, and the husband refused to apply the money received as insurance to the repair of the building, and a bill was filed by the wife asking for the appointment of a receiver to apply such money in making repairs to the dwelling. The court

held, on demurrer to the bill, that if the facts alleged were sustained by proof, the court was justified in assuming jurisdiction and requiring the defendant to answer, and if need be, in appointing a receiver as prayed. Judge Boyd, speaking for the court in that case, said: "By expressions used in some of the cases, such as "the common law principle remains unaffected by statute.' 'This estate with incidents continues in Maryland as it existed at common law,' etc., we do not understand it to have been meant that all of the incidents of a tenancy by entireties continue as at the common law, or that the common law rules which governed the use and control of a wife's interest in such a tenancy were not or could not be affected by such statutes as those passed for the benefit of married women." Judge Boyd then quotes Judge Miller in *Fladung v. Rose, supra,* where it was said: "In view of these provisions (in the statutes) it seems unreasonable to say that the legal unity and oneness of man and wife, upon which the peculiar tenancy by entireties was founded, still continues just as it existed at common law." And we may add that, since the decision in *Fladung v. Rose,* the rights of married women in respect to their property have been greatly enlarged.

That the husband and wife may, under the decisions of this state, hold property as joint tenants, where, by the devise or grant it is clearly shown that they were to so take, is recognized in 1 *Tiffany, Real Property,* p. 646, where the learned author says: "While a conveyance or devise to a husband and wife will ordinarily create a tenancy by entireties, the authorities are generally to the effect that an intention, clearly expressed in the instrument, that they shall take as tenants in common or as joint tenants, will be effective," and cites *Fladung v. Rose* in support of this statement. See also note to *Settle v. Settle,* 43 A. L. R. 1079.

The language in the granting clause of the deed conveying the property here involved was "unto J. Roland Johnson and Carrie P. Johnson, as joint tenants, their heirs and assigns in fee simple," and in the habendum it was to them, the husband and wife, "as joint tenants with the common law

right of survivorship." It will be observed that the language in the conveyance in this case is very similar to the language used in the deed in *Fladung v. Rose, supra,* where it was said that it was manifest that a joint tenancy was to be created. We think it is equally as manifest from the language used that it was the intention that a joint tenancy was to be created in the case now before us. The learned chancellor below, in reaching his conclusion that the estate conveyed was by entireties, was influenced, it seems, by the language used in the habendum clause, where the words are "as joint tenants with the common law right of survivorship," as indicating that an estate by entireties was to be created by the use of those words. It is true there was a common law right of survivorship incident to estates by entireties, but the right of survivorship is also at common law incident to the right of joint tenancy, and we cannot see why the use of these words have any greater application to an estate by the entireties than they have to an estate by joint tenants.

It was manifest, we think, by the language used in the deed in the granting clause, considered in connection with the use of the language in the habendum, that the intention of the parties was to grant a joint tenancy, and, this being so, the interest of the husband in the land described in the deed of trust is liable for the payment of the sum for which the deed of trust was executed by him as a pledge, and therefore we will reverse the decree appealed from, that the interest of the husband in said lands may be sold under the deed of trust for the payment of said indebtedness, if the same is not paid.

The case will be remanded, that proceedings may be had in accordance with the views here expressed.

*Decree reversed, and case remanded, with costs to the appellant.*